AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>DUSTIN TRAVIS HOFFMAN,<br>a.k.a "Red"<br><br>*Defendant(s)* | )<br>)<br>)  Case No.<br>)         3:26-mj-1004-MCR<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __July 2, 2025__ in the county of __Duval__ in the
__Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Possession of a firearm by a convicted felon |

This criminal complaint is based on these facts:

See affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Molly Griffin, Special Agent - DEA
*Printed name and title*

Sworn to before me over the telephone or other reliable electronic means and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date: 1/7/26

_____
*Judge's signature*

City and state: Jacksonville, FL                Monte C. Richardson United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Molly Griffin, a Special Agent (SA) with the Drug Enforcement Administration (DEA), being duly sworn, do hereby depose and state as follows:

1. This affidavit is submitted in support of a criminal complaint and arrest warrant for Dustin Travis Hoffman, also known as "Red." As set forth below, there is probable cause to believe that Hoffman possessed a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1).

2. The statements set forth in this affidavit are based upon my training and experience, consultation with other experienced investigators, agents, and other sources of information related to this and other investigations. This affidavit is intended to set forth probable cause in support of the criminal complaint and arrest warrant and does not purport to set forth all of my knowledge or the entirety of the facts of this investigation.

## BACKGROUND OF AFFIANT

3. I am a SA with the DEA, and as such, I am empowered under 21 U.S.C. § 878 and other criminal laws of the United States to make arrests, and obtain and execute search, seizure, and arrest warrants. I have been a SA with DEA since 2001. Prior to joining DEA, I was a SA with the U.S. Postal Service in Arlington, Virginia, for approximately four years.

4. As part of my official duties, I investigate civil and criminal violations of the Controlled Substances Act, Title 21 of the United States Code, as well as Title 18. During the course of my career in law enforcement, I have participated in numerous drug

trafficking and firearms investigations, conducted electronic surveillance, and spoken with defendants, witnesses, and informants, as well as others who have knowledge of the distribution and transportation of controlled substances and firearms trafficking. In furtherance of my investigations, I have used numerous investigative techniques, including undercover transactions, controlled purchases, and been granted federal and state search warrants.

## PROBABLE CAUSE

5. I am a member of a High Intensity Drug Trafficking Area (HIDTA) Task Force in Jacksonville, Florida, investigating Hoffman as a as a firearms trafficker. This investigation was initiated in the summer of 2025 and is currently being worked jointly between DEA and the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF).

6. I have reviewed Hoffman's criminal history and learned that he is a convicted felon. For instance, in May 1998, Hoffman was arrested for sale of "crack" cocaine and cocaine possession in the state of Florida. In June 1998, HOFFMAN was convicted of these felony charges.

### Undercover Controlled Buy – July 2025

7. On July 2, 2025, I, along with special agents and other Task Force Officers (TFO) with DEA Jacksonville District Office (JDO), alongside ATF special agents and TFOs, conducted an undercover buy operation in Jacksonville. A member of the investigative team posed as an as a firearms purchaser and will be referred to herein as the "UC."

2

8. The UC was outfitted with electronic transmitting and recording equipment to allow other members of law enforcement to monitor and record the deal. In addition to an audio video recording, agents also deployed aerial video surveillance via U.S. Customs and Border Protection Air Marine Unit, which recorded the entirety of the transaction.

9. The UC spoke to an individual whose identity is known to law enforcement and who will be referred to herein as the "middleman." This middleman orchestrated the sale of firearms by Hoffman to the UC.

10. Surveillance was established by members of the investigative team in anticipation of the transaction. Shortly thereafter, the middleman arrived. The UC heard the middleman speak to Hoffman via telephone and arrange to purchase firearms, among other items, on behalf of law enforcement.

11. The middleman told the UC that the guy or the source (meaning Hoffman) would meet nearby shortly, and the middleman was headed to pick up Hoffman. I, along with members of the surveillance team, followed the "middleman" to a residence in Jacksonville, where agents observed that Hoffman put what appeared to be a large duffle bag into the trunk of the middleman's vehicle. The middleman and Hoffman directed the UC to follow their vehicle. Agents then followed the UC vehicle and the middleman's vehicle to a second residence in the Middle District of Florida.

12. I observed as Hoffman, standing at the end of the residence's driveway, sold three firearms from the trunk of the middleman's vehicle to the UC. When I spoke to the UC, he recalled that the rifles were in the trunk of the middleman's vehicle and

that these firearms were in a black trash bag covered in a large blue blanket. The UC stated that a handgun was in the front passenger seat of the vehicle where Hoffman retrieved it prior to selling it to the UC at the trunk of the vehicle.

13. Later, other members of law enforcement and I inspected the firearms the UC purchased from Hoffman and observed that the firearms sold to the UC were a Romarm model AK47 7.62 caliber rifle, a Springfield 9 mm pistol, and a GTO Core model 30 .308 rifle. The firearms were purchased with ATF Official Advanced Funds (OAF). Prior to the submission of this complaint, I spoke to a certified ATF interstate nexus expert who advised that both the Romarm rifle and the Springfield pistol were manufactured outside of the State of Florida and therefore traveled in interstate commerce.

### Undercover Controlled Buy – September 2025

14. On September 10, 2025, the UC again met with Hoffman at a location in Jacksonville. The meeting was audio video recorded. DEA and ATF agents and TFO's monitored the meeting from the outside of a business. I saw Hoffman arrive in a white Mercedes SUV, which I knew from this investigation is registered to Hoffman's girlfriend. During the meeting, HOFFMAN spoke in great detail to the UC about selling fentanyl, as well as firearms. Hoffman told the UC that he (Hoffman) was prepared to sell both fentanyl and firearms to the UC, noting that the firearms were "right around the corner."

15. The following day, on September 11, 2025, the UC and Hoffman met again to conduct a firearms transaction. The UC drove a separate vehicle during this

4

transaction and had ATF OAF for the purchase of firearms from Hoffman. The UC also had an ATF audio video recording device to record the interaction with Hoffman. The UC eventually pulled up to the planned meeting location and spoke with Hoffman about the firearms. Hoffman told the UC to follow him (Hoffman) up the road to a restaurant to purchase firearms from Hoffman. The UC followed Hoffman.

16. I observed Hoffman and the UC meeting in the restaurant parking lot. I saw Hoffman walk away from his vehicle to an SUV parked nearby in the same parking lot. Agents saw Hoffman standing at the back of the SUV as the UC drove the UC vehicle closer to the SUV. The UC later confirmed that Hoffman retrieved firearms from the SUV and sold the firearms to the UC via the male who was the driver and sole occupant of the SUV.

17. I saw Hoffman putting something into the UC vehicle. The UC later advised me that the UC purchased one Rossi model 38 .38 caliber revolver, three semi-automatic handguns (a Glock model 19X, a Glock model 23, and a HS Produkt Springfield XD40), and one Palmetto State Armory 5.56 mm rifle from Hoffman during this transaction. Following the transaction, the UC maintained custody of the firearms, which were transported to the ATF office for processing as evidence. Prior to the submission of this complaint, I spoke to a certified ATF interstate nexus expert who advised that all of the firearms purchased from HOFFMAN during this transaction were manufactured outside of the State of Florida and therefore traveled in interstate commerce.

18. I was told by ATF agents that their investigation revealed that some of the firearms sold in this investigation by Hoffman were stolen from an individual in Tennessee, and furthermore, that state investigators have determined that Hoffman himself was the suspect in this theft.

## Conclusion

19. Based upon the aforementioned information, events, and my training and experience, there is probable cause to believe that Hoffman unlawfully possessed multiple firearms as a convicted felon in violation of 18 U.S.C. § 922(g)(1).

I hereby state that the facts stated in the foregoing affidavit are true and correct to the best of my knowledge, information and belief.

Respectfully submitted,

_____
Molly Griffin
Special Agent
Drug Enforcement Administration

Sworn to before me over the telephone or other reliable electronic means and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) this 7th day of January, 2026.

_____
Monte C. Richardson
UNITED STATES MAGISTRATE JUDGE
MIDDLE DISTRICT OF FLORIDA

6